UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

United States of America,

    Plaintiff,

v.

D-1 Mark Rocca,

    Defendant.
_____/

Case: 2:21−cr−20157
Assigned To : Hood, Denise Page
Referral Judge: Patti, Anthony P.
Assign. Date : 3/4/2021
Description: INFO USA V. ROCCA (NA)

Violations:
18 U.S.C. § 1956(h) : Conspiracy
to Launder Monetary Instruments

## INFORMATION

THE ACTING UNITED STATES ATTORNEY CHARGES

### COUNT ONE
### 18 U.S.C. § 1956(h) - Conspiracy to Launder Monetary Instruments

D-1 Mark Rocca

1.    From on or about January 1, 2019, to on or about November 18, 2020, in the Eastern District of Michigan, defendant, Mark Rocca, knowingly and intentionally conspired and agreed with other individuals to commit offenses against the United States in violation of Title 18, United States Code, Section 1956, to wit: to knowingly conduct and attempt to conduct a financial transaction affecting interstate and foreign commerce, which involved the proceeds of a specified unlawful activity, that is Operating an Unlicensed Money Transmitting Business, in violation of Title 18, United States Code, Section 1960, with the intent

to promote the carrying on of specified unlawful activity, that is, violations of Title 18, United States Code, Section 1960, and that while conducting and attempting to conduct such financial transaction knew that the property involved in the financial transaction represented the proceeds of some form of unlawful activity in violation of Title 18, United States Code, Section 1956(a)(1)(A)(i).

## Manner and Means of the Conspiracy

2. It was part of the conspiracy that the Defendant, Mark Rocca ("Rocca") owned and operated a business named "UDM Coin Center, L.L.C." which manages a retail storefront with the signage "CRYPTO COIN CENTER," located at 6325 W. McNichols Road, Detroit, Michigan, which is within the Eastern District of Michigan.

3. Rocca owned and operated the "CRYPTO COIN CENTER" between January 1, 2019, and November 18, 2020. Rocca was the registered owner of business.

4. The "CRYPTO COIN CENTER" was a money transmitting business that affected interstate commerce. Specifically, individuals could enter and trade cryptocurrencies, such as bitcoin, for U.S. Dollars, and vice versa.

5. "Bitcoin" (or "BTC") is one type of cryptocurrency (also known as virtual currency or digital currency)—that is, a decentralized peer-to-peer form of electronic currency that has no association with any banks or governments.

6. Payments or transfers of value made with bitcoin are recorded in the bitcoin blockchain and thus are not maintained by any single administrator or entity. Individuals can acquire bitcoin through exchanges, bitcoin ATMs, or directly from other people. Individuals can also acquire bitcoin and other cryptocurrencies by "mining" for them, which entails using one's computing power to solve a complicated algorithm and to verify and record payments on the blockchain, for which the mining party is rewarded by receiving newly created units of the cryptocurrency.

7. Individuals can send and receive bitcoin and other cryptocurrencies online using many types of electronic devices, including laptop computers and smart phones.

8. Even though the public addresses of those engaging in bitcoin transactions are recorded on a blockchain, the identities of the individuals or entities behind the public addresses are not recorded on these public ledgers. If, however, an individual or entity is linked to a public address, it may be possible to determine what transactions were conducted by that individual or entity. Bitcoin transactions are therefore sometimes described as "pseudonymous," meaning that they are partially anonymous. And although not completely anonymous, bitcoin allows users to transfer funds more anonymously than would be possible through traditional banking and credit systems.

9. Bitcoin "exchangers" and "exchanges" are individuals or companies that exchange bitcoin for other currencies, including U.S. dollars. According to Department of Treasury, Financial Crimes Enforcement Network ("FinCEN") Guidance issued on March 18, 2013, virtual currency administrators and exchangers, including an individual exchanger operating as a business, are considered money services businesses.

10. Such exchanges and exchangers are required to register with FinCEN and have proper state licenses (if required under applicable state law). Registered money transmitters are required by law to follow Bank Secrecy Act anti-money laundering ("AML") regulations, "Know Your Customer" ("KYC") protocols, and other verification procedures similar to those employed by traditional financial institutions. For example, FinCEN-registered cryptocurrency exchangers often require customers who want to open or maintain accounts on their exchange to provide their name, address, phone number, and/or the full bank account and routing numbers that the customer links to his/her exchange account.

11. As a result, there is significant market demand for illicit cryptocurrency-for-fiat currency exchangers, who not only lack AML or KYC protocols, but also often advertise their ability to provide anonymous or "stealth" transfers of funds.

12. These illicit exchangers, such as the "CRYPTO COIN CENTER" often exchange fiat currency for cryptocurrencies. Due to the illicit nature of these transactions and their customers' desire for anonymity, such exchangers are frequently able to charge a higher exchange fee, often as high as 9–10% (in contrast to registered and BSA-compliant exchangers, who may charge fees as low as 1–2%).

13. Rocca and the "CRYPTO COIN CENTER" actively advertised money transmitting services through the classified advertisement website Craigslist. While owning and managing the "CRYPTO COIN CENTER," Rocca would buy and sell bitcoins for cash while failing to comply with the money transmitting business registration requirements set forth in Title 31, United States Code, Section 5330.

14. At the "CRYPTO COIN CENTER," individuals would pay a premium exchange free, often times 10% of the total transaction, to exchange bitcoin for U.S. Dollars without having to provide any information whatsoever.

15. This meant there was no accounting of who was entering and exiting the store, and that the names of the individuals conducting the exchange was not recorded. Finally, Rocca or other employees made no steps to verify whether or not the bitcoin was proceeds from some other illicit activity, or any of the other requirements outlined above.

16.    In sum, none of the anti-money laundering provisions required by regulation or law found in traditional financial institutions were undertaken by Rocca and his employees at the "CRYPTO COIN CENTER."

17.    As such, Rocca and employees at the "CRYPTO COIN CENTER" conspired and agreed to operate an unlicensed money transmitting business that affected interstate or foreign commerce in some manner and degree.

18.    Specifically, between January 1, 2019, and November 18, 2020, Rocca, while owning and operating the "CRYPTO COIN CENTER," made at least 380 illegal exchanges of cryptocurrency for U.S. Dollars.  None of these transactions complied with state or federal law.  The total amount of the transactions was at least $ 224,993.00 Dollars.

19.    Money from the illicit exchange of cryptocurrency was used to promote the business of the "CRYPTO COIN CENTER."

20.     The money transmitting business "CRYPTO COIN CENTER" failed to comply with the registration requirements of the United States Department of Treasury as set out in Title 31, United States Code, Section 5330 (that is, it was not registered with the Secretary of the Treasury within 180 days of its establishment, as required by the Money Laundering Suppression Act of 1994, effective September 23, 1994).  All in violation of Title 18, United States Code, Sections 1960.

21. To protect the "CRYPTO COIN CENTER" ROCCA possessed a Cold 1911 handgun and a Remington 870 shotgun in the business.

22. All in violation of Title 18, United States Code, Section 1956(h).

## FORFEITURE ALLEGATION

1. The allegations contained in Count One of this Information are hereby realleged and incorporated by reference for the purpose of alleging forfeiture under Title 18, United States Code, Section 982(a)(1).

2. Pursuant to Title 18, United States Code, Section 982(a)(1), upon conviction of an offense in violation of Title 18, United States Code, Section 1956, the Defendant shall forfeit to the United States any property, real or personal, involved in such offense, and any property traceable to such property.

3. <u>Substitute Assets</u>:  If the property described above as being subject to forfeiture, as a result of any act or omission of Defendant:

   a. Cannot be located upon the exercise of due diligence;

   b. Has been transferred or sold to, or deposited with, a third party;

   c. Has been placed beyond the jurisdiction of the Court;

   d. Has been substantially diminished in value; or

   e. Has been commingled with other property that cannot be divided without difficulty;

the United States of America shall be entitled to forfeiture of substitute property pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title

18, United States Code, Section 982(b)(1) and Title 28, United States Code, Section 2461(c).

SAIMA S. MOHSIN
Acting United States Attorney

*s/Julie Beck*
JULIE BECK
Chief, Drug Task Force Unit

*s/Robert Jerome White*
ROBERT JEROME WHITE
Assistant United States Attorney

Dated: 3/4/2021

| United States District Court<br>Eastern District of Michigan | Criminal Case Cover Sheet | Case Number:<br>21-20157 |
|---|---|---|

NOTE: It is the responsibility of the Assistant U.S. Attorney signing this form to complete it accurately in all respects.

| **Companion Case Information** | **Companion Case Number:** |
|---|---|
| This may be a companion case based on **LCrR 57.10(b)(4)**[1]: | |
| ☐Yes ☑No | **AUSA's Initials: RW** |

**Case Title:**   USA v. Mark Rocca

**County where offense occurred:**   Wayne

**Offense Type:**   Felony

Information -- **no** prior complaint

**Superseding Case Information**

**Superseding to Case No:** _____   **Judge:** _____

**Reason:**

| **Defendant Name** | **Charges** | **Prior Complaint (if applicable)** |
|---|---|---|

**Please take notice that the below listed Assistant United States Attorney is the attorney of record for the above captioned case**

3/4/21
Date

**s/ Robert Jerome White**

Robert Jerome White
Assistant United States Attorney
211 W. Fort Street, Suite 2001
Detroit, MI 48226
Robert.White@usdoj.gov
(313) 226-9620
Bar #: IL 6304282

---

[1] Companion cases are matters in which it appears that (1) substantially similar evidence will be offered at trial, or (2) the same or related parties are present, and the cases arise out of the same transaction or occurrence. Cases may be companion cases even though one of them may have already been terminated.